IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| v. | § | CASE NUMBER 1:97-CR-105 (3)-MJT |
| | § | |
| | § | |
| REDDERICK WAYNE HOPE | § | |
| | § | |

REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Pending before the undersigned is a *Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)* (Doc. No. 144) filed by the Defendant, Redderick Wayne Hope ("Hope"), on October 7, 2020.  The Government filed a response opposing Hope's request on November 4, 2020 (Doc. No. 148).  Hope filed a *Memorandum Response* on April 6, 2022 (Doc. No. 157), the Government filed a response on June 13, 2022 (Doc. No. 157), and Hope filed a subsequent rebuttal on June 27, 2022.  Hope's original Motion for Compassionate Release was referred to the undersigned on April 27, 2023.[1]  (Doc. No. 160.)  After reviewing all applicable facts and law, the undersigned recommends granting the motion because Hope has established extraordinary and compelling reasons for compassionate release.

### I. Offense Conduct Relevant to Federal Charges[2]

On July 23, 1997, Hope was named in a three-count indictment charging him and two co-defendants with violations of 18 U.S.C. § 371 (Conspiracy), 18 U.S.C. § 2119 (Carjacking), and 18 U.S.C. § 924(c)(1) (Use of a Firearm During and in Relation to a Crime of Violence).  (Doc.

---

[1]      This motion is referred to the undersigned United States magistrate judge for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law.  *United States v. Raddatz*, 447 U.S. 667, 681-84 (1980); *see also* 28 U.S.C. § 636(b)(1)(B) and E.D. TEX. LOCAL R. CR-59(a).

[2]      Hope's Presentence Investigation Report (Doc. No. 89, p. 3-6) details his involvement in this case.

89, p. 3.)  On June 3, 1997 (at the age of 18), Hope and three others travelled from Port Arthur, Texas, to Beaumont, Texas, for the purpose of stealing a vehicle.  In the early morning hours of June 4, 1997, the defendants found their victim who was washing his car in a stall at a car wash. One of the co-defendants approached the victim, pointed a semiautomatic firearm at his face, ordered him to get on the ground and give them his money before striking him (an injury which required ten stitches and eight days of lost work due to pain and medication).  During the incident, a co-defendant fired a firearm into the air.

Hope drove the vehicle from the car wash with the co-defendants.  A police chase ensued, and Hope and his co-defendants jumped from the vehicle and were able to avoid detention (after stealing a firearm and stereo).  Ultimately, Hope was arrested on August 7, 1997—his 19th birthday—and has been incarcerated in either state or federal custody ever since.

During the presentence investigation interview, Hope admitted to his participation in the carjacking, but claims he was the "lookout" while the co-defendants approached the victim.[3] Hope denied that he furnished any of the firearms or stole a firearm from the victim's car.  Hope expressed remorse over his actions and stated that there never a plan to strike the victim, only to fire a shot to scare him.  The report notes that Hope did not hold any type of supervisory control over any of the defendants and the sentencing transcript reflects that he cooperated with law enforcement to identify and prosecute his co-defendants.  (Doc. No. 117, p. 27.)

Hope pled guilty to the second count of the Superseding Indictment that charged him with a violation of 18 U.S.C. § 2119 (Carjacking).  On December 16, 1997, United States

---

[3]    Hope's claim to be solely a "lookout" was disputed by at least one co-defendant.  (Doc. No. 117, p. 44.) However, the court notes that Hope has consistently maintained that he was the lookout, never held the firearm, never fired the firearm, and did not intend for anyone to get hurt during the carjacking.  At sentencing, his attorney reported to the court that the carjacking victim "could not point out Mr. Hope.  He never saw Mr. Hope.  Mr. Hope did not confront the victim and only agreed to go along with [the carjacking] with the understanding that no one would get hurt."  (Doc. 117, p. 27.)  The undersigned cannot find anything in the record to dispute these assertions.

District Judge Howell Cobb sentenced him to 168 months' imprisonment, with three years of supervised release to follow.[4]  Although Judge Cobb acknowledged the pending state charges at the sentencing hearing, his oral pronouncement and written judgment were silent as to whether the federal sentence would run consecutively or concurrently with the anticipated state sentence. In April of 1999, Hope was sentenced in state court to 15 years' imprisonment for five separate state felonies.  The state sentences were explicitly ordered to run concurrently with each other, but *consecutively* to his federal sentence.[5]  *State of Texas v. Hope*, Case No. F97-74-750 (Jefferson County April 12, 1999 (Agreed Punishment Recommendation referencing Case No. F97-74744) (Unauthorized Use of a Vehicle), F97-74743 (Unauthorized Use of a Vehicle), F97-74790 (Aggravated Robbery), F-98-76545 (Escape), and F97-74799 (Aggravated Robbery)).

## II.  Juvenile Criminal Behavior[6]

The June 1997 carjacking was not Hope's first criminal act.  Records show that he was first referred to the Jefferson County Juvenile Probation Department for the offense of theft at age 13.  (Doc. No. 89, p. 11.)  Unfortunately, his criminal behavior continued, and he was again referred to Juvenile Probation at age 14 for criminal mischief on January 12, 1993, and again on January 27, 1993, for burglary of a vehicle.  (*Id.*)  Hope's criminal acts repeated throughout his teenage years, and by the time Hope reached his 18th birthday, he had stolen five cars and

---

[4]        The range of punishment for a violation of 18 U.S.C. § 2119 is a term of imprisonment of "not more than fifteen (15) years.  A term of supervised release of at least two (2) years, but not more than three (3) years," and a special assessment of $100.  (Doc. 44, p. 2.)  With a total offense level of 31 and a criminal history category of V, Hope's guideline range was 168 to 210 months.  However, pursuant to U.S.S.G. § 5G1.1(c)(1), as the guideline range exceeds the statutorily authorized maximum sentence of 15 years, the guideline range became 168 to 180 months.  (Doc. No. 89, p. 15.)  Hope's case was reassigned to District Judge Ron Clark on November 28, 2006, to District Judge Thad Heartfield on August 30, 2018, and finally to District Judge Michael Truncale on May 19, 2021.

[5]        However, even if the state court imposed a concurrent sentence, concurrent sentences imposed by state judges are nothing more than recommendations to federal officials.  *Leal v. Tombone*, 341 F.3d 427, 429 (5th Cir. 2003).

[6]        Hope's Presentence Investigation Report (Doc. No. 89, p. 11-13) details his juvenile criminal record.

burglarized three homes.  While incarcerated in the Texas Youth Commission, Hope had twelve incident reports—eleven of which were for "disruption of program" and one for "assaulting a staff member."

Records also reflect that as a teenager, Hope was a member and possible recruiter for the "Rollin 60's" street gang in Port Arthur, which is associated with the larger Crips gang organization.  (Doc. No. 89, p. 13, 22.)

### III.  Offense Behavior Relevant to State Charges[7]

On October 15, 1996 (less than one year prior to his federal offense and nearly two months after his 18th birthday), Hope was involved in a home burglary in Port Neches, Texas.[8] Hope and a co-defendant followed a woman home from a K-Mart and Hope approached her in her garage wearing a ski mask and holding a pistol.  He demanded money and stole her purse. On May 12, 1997, Hope stole a vehicle in Port Arthur, Texas.  On May 13, 1997, Hope drove the getaway vehicle in an attempted robbery where the victim was shot by a co-defendant.  On June 8, 1997, Hope stole a car in Port Arthur, Texas, and evaded arrest.  These state charges remained pending at the time he was sentenced in federal court.  Ultimately, he pled guilty to all the state charges and was sentenced to 15 years in TDCJ custody, which he served prior to the beginning of his 168 month federal term of imprisonment.

### IV.  Grounds for Relief and Government's Response

The procedural history shows that Hope has diligently pursued ways to correct what he misunderstood to be an error in sentencing resulting in the imposition of his federal sentence to run consecutively to his state sentence.  These attempts—raised in collateral review

---

[7]    Hope's Presentence Investigation Report (Doc. No. 89, p. 7-8) details his criminal behavior relevant to the state charges.

[8]    This criminal act was completely unrelated to and independent of his later federal criminal carjacking act.

proceedings—were unsuccessful.[9]    On April 14, 1998, he filed a *Pro Se Motion to Reduce Sentencing.*  (Doc. No. 114); *see also Hope v. United States*, No. 1:98-cv-1896 (E.D. Tex. 1998).  On March 5, 2001, Hope filed a *pro se* motion asking Judge Cobb to order that his federal and state sentences run concurrently.  (Doc. No. 124.)  Hope petitioned the court for a reduction in sentence on August 28, 2018, through a *pro se* letter asking the court to modify the federal sentence so that the state and federal terms of imprisonment would be concurrent instead of consecutive.[10]  (Doc. 142, p. 1.)  In this *pro se* motion, Hope wrote:

> In my early youth I was a car thief and burglar.  I did not like confrontation.  I do admit that even though I participated in some serious crimes, I personally never physically harmed anyone in my life.  I am not a violent person.  I chose the wrong friends and found out too late [who] some of them were.  I understand that I am just as guilty because I was there.  I have regret[t]ed my choices for the past 21 years.  At my sentencing before the Honorable Judge Cobb, I remember him stating that I had been given a number of chances before, but to my 18 year old mind I had no idea of the pain I caused to my victims and my own family. I have lost all of my grandparents during this incarceration period.  I believe in the

---

[9]    Hope does not assert that his failed collateral proceedings filed pursuant to 18 U.S.C. § 2255 constitute an "extraordinary and compelling" reason for release, nor does the Fifth Circuit recognize it as a factor in compassionate release cases.  *United States v. McMaryion*, No. 21-50450, 2023 WL 4118015, at *1 (5th Cir. June 22, 2023) (citing *Escajeda*, 58 F.4th at 186-188.  ("But because these claims are cognizable under 28 U.S.C. § 2255, they are not cognizable under 18 U.S.C. § 3582(c).")

However, some courts have recognized this as a factor.  *See United States v. Comer*, No. 5:12-CR-043, 2022 WL 1719404, at *5 (W.D. Va. May 27, 2022) (granting compassionate release where sentencing judge was mistakenly informed that defendant was getting state credit for the time he was serving, and defendant's attempt at correcting sentence through collateral proceedings failed); *United States v. Eccleston*, 543 F.Supp.3d 1092 (D.N.M. 2021) (granting compassionate release where the record reflected that the understanding at the federal sentencing was that the sentence imposed to run concurrently with a state sentence, but the sentences were run consecutively, and defendant's collateral proceedings failed).

[10]    In support, Hope relied on  *Setser v. United States*, 132 S. Ct. 1463, 1473 (2012).  Like Hope, the defendant in *Setser* was sentenced in federal court while state charges were pending.  He was charged in state court with a drug offense and parole violation. *See id.* at 1466. The federal court ordered that its sentence run consecutively to the anticipated parole violation sentence, but concurrently with the drug sentence.  *See id.*  The state court later ordered that the sentences for the drug offense and the parole violation be served concurrently.  *See id.* at 1467.  Affirming the federal sentence, the Supreme Court held that federal district courts have discretion to order that a federal sentence run consecutively to an anticipated, but not-yet-imposed, state sentence.  *See id.* at 1473.

Prior to the Supreme Court's holding in *Setser*, judges had broad discretion to order that federal sentences run consecutively to or concurrently with other sentences that they impose, or that have been imposed in other proceedings, including state proceedings.  *Id.* at 1468.  However, in his dissent, Justice Breyer noted that—despite this discretion—there was "no significant tradition of federal judges imposing a sentence that runs consecutively with a sentence not yet imposed." *Id.* at 1477.

Justice system here in America, and if you Honor would find it in his heart to amend or modify my sentence, I will spend the rest of my dates here on earth making up for my sins and re-paying society as a whole by giving back to the communities in any way that I can.  21 years of being locked up straight has given me a new respect for the small things in life.  I will be the success story . . ."

(Doc. 142, p. 2.)  The court never ruled on or recognized his requests.

In October 2020, Hope filed a motion for compassionate release, relying in part on the threat posed by the COVID-19 pandemic.[11]  (Doc. No. 144.)  At the time, Hope had spent 23 years in prison: fifteen years in state custody and eight years toward his 168 month federal sentence.  Hope seeks compassionate release on several "extraordinary and compelling" grounds: his age at the time of offense, the length of consecutive state and federal sentences, his misunderstanding that the sentences would not run concurrently, and rehabilitation efforts made in prison.  His motion states:

Rodderick Hope's sentence of 168 months in and of itself is not extraordinary. The circumstances of how this sentence has been carried out are.  In 1997 at the age of 18,[12] he was sentenced for a carjacking and also for a state robbery charge for which he pled guilty and accepted a 15 year sentence that was supposed to run concurrent[ly] with the federal sentence.   But due to the ineffectiveness of the court appointed lawyer the state sentence was ran [sic] consecutively.   This resulted in Hope serving 15 years away in TDC.  Once this sentence was served and he was released, he was sent straight to the [Federal Bureau of Prisons] to begin serving his federal sentence of another 14 years . . . While most young men would be crushed under the strains of serving 15 straight [years] and then beginning another 14 year sentence away from their loved ones, Hope was different . . . Hope started his time in the Federal Bureau of Prisons by compiling an extraordinary record of rehabilitation.  That record includes sterling prison

---

[11]    The undersigned finds that Hope's medical conditions and the threat of Covid-19 do not constitute an extraordinary or compelling reason for release.  See McMaryion, 2023 WL 4118015, at *2 (denying compassionate release where defendant cited general concerns of COVID-19 infection and emphasizing that "it is the actuality, not the risk, of terminal illness that makes a prisoner's circumstances extraordinary"); United States v. Anderson, No. 21-10738, 2022 WL 2072864, at *3 (5th Cir. June 9, 2022) (denying compassionate release where defendant alleged health conditions placed him at higher risk of illness from COVID-19 because there was "no evidence in the record to suggest any of [the defendant's] conditions are terminal illnesses or that he has a condition that substantially diminishes his ability to provide self-care"); United States v. Thompson, 984 F.3d 431, 435 (5th Cir.), cert. denied, 210 L. Ed. 2d 843, 141 S. Ct. 2688 (2021) (denying release for "an otherwise healthy defendant with two, well-controlled, chronic medical conditions and who had completed less than half of his sentence").

[12]    The record reflects that Hope committed the offense when he was 18 years old, but he was not sentenced until after his 19th birthday.  (Doc. 89, p. 1.)

conduct as evidenced by numerous certificates and the lowering of his classification points.

(Doc. No. 144, p. 2-3.)  The motion also states that "Due to Hope's age at the time of sentencing, he did not understand that the federal sentence would not start running until after the state sentence had ceased to exist in full."  (*Id.*, p. 12.)

The Government's response narrowly focuses on how Hope's medical condition does not constitute an "extraordinary and compelling" reason for release and ignores the specific arguments Hope raised in his briefing.  (Doc. No. 148, p. 8-12.)  The Government responds generally that the § 3553(a) factors strongly weigh against release because the Defendant's criminal history demonstrates that he still poses a significant danger to the safety of the community.

## V.  Legal Standard

Title 18 U.S.C. § 3584(a) provides, in relevant part, that "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently."   Because Judge Cobb did not specify that Hope's sentence was to run concurrently with the anticipated state sentence, the effect of the court's judgment was that it was to be served consecutively to any state court sentence.

"A federal court generally 'may not modify a term of imprisonment once it has been imposed.'"  *Dillon v. United States*, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)). The First Step Act of 2018, Pub. L. No. 115-39132 Stat 5194 (December 21, 2018) ("First Step Act"), amended § 3582 to expand district courts' power to reduce defendants' sentences after they have been imposed by "increas[ing] the use and transparency of compassionate release." Section 3582(c)(1)(A) "authorize[s] a sentence reduction where: (1) 'extraordinary and compelling reasons warrant such a reduction,' (2) 'such a reduction is consistent with applicable

7

policy statements issued by the Sentencing Commission,'[13] and (3) such a reduction is appropriate 'after considering the factors set forth in section 3553(a) to the extent that they are applicable.'" *United States v. Shkambi*, 993 F.3d 388, 389 (5th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)).

Section 3582(c)(1)(A) does not define the "extraordinary and compelling reasons" that may merit compassionate release. The court therefore looks to the phrase's plain and ordinary meaning. "Extraordinary" means "'beyond or out of the common order,' 'remarkable,' and synonymous with 'singular.'" *United States v. Escajeda*, 58 F.4th 184, 188 (5th Cir. Jan. 17, 2023) (quoting *Extraordinary*, Webster's New International Dictionary 903 (2d. ed. 1934; 1950)). "'Compelling' is a participle of 'compel,' which means 'to drive or urge with force, or irresistibly,' 'to force,' and 'to subjugate.'" *Id.* (quoting *Compel*, Webster's New International Dictionary, *supra*, at 544). Section 3582(c)(1)'s use of these terms together limits compassionate release to instances where prisoners "face some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner." *Id.* (citing *Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020)); *see also United States v. McMaryion*, No. 21-50450, 2023 WL 4118015, at *1 (5th Cir. June 22, 2023) (quoting *Escajeda*, 58 F.4th at 186) ("[T]o prevail, a prisoner seeking compassionate release must "show that he 'face[s] some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner' that

---

[13]    The Sentencing Commission has the authority to "promulgate general policy statements … that describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *United States v. Williams*, No. 3:18-CR-0291-B-2, 2021 WL 1865005, at *2 (N.D. Tex. May 10, 2021) (quoting *United States v. Shkambi*, 993 F.3d 388, 391 (5th Cir. 2021)). Prior to the passage of the First Step Act, the Sentencing Commission issued a policy statement, U.S.S.G. § 1B1.13, setting forth the circumstances that are considered "extraordinary and compelling reasons." *Id.* (citing *United States v. Muniz*, NO. 4:09-CR-0199-1, 2020 WL 1540325, at *1 (S.D. Tex. Mar. 30, 2020) (citing § 1B1.13(1)(A), cmt. n.1)). These include the defendant's medical condition, age, family situation, and "other reasons." *See* § 1B1.13(1)(A), cmt. n.1.4. But the Fifth Circuit has made it clear—U.S.S.G. § 1B1.13 is not binding on the court in compassionate release cases (though it can be utilized). *United States v. Escajeda*, 58 F.4th 184, 188 (5th Cir. Jan. 17, 2023) ("[T]here are no policy statements applicable to prisoners' compassionate-release motions.") (citing *Shkambi* at 392-393); *United States v. Hampton*, No. 21-60056, 2021 WL 5409245, at *3 (5th Cir. Nov. 18, 2021).

leads 'irresistibly' to the conclusion that the prisoner has a 'singular' and 'remarkable' need for early release."); *United States v. Ozen*, No. 1:14-CR-118, 2023 WL 4467160, at *4 (E.D. Tex. July 11, 2023).

If the district court finds that extraordinary and compelling reasons warrant a sentence reduction, "then the court 'may' reduce the defendant's sentence 'after considering the factors set forth in section 3553(a) to the extent that they are applicable.'" *Ward v. United States*, 11 F.4th 354, 359–60 (5th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)).   The applicable § 3553(a) factors include, *inter alia*: the defendant's history and characteristics; the nature and circumstances of the offense; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; the need to deter criminal conduct and protect the public from further crimes of the defendant; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the need to avoid unwarranted sentencing disparities among similarly-situated defendants; and the various kinds of sentences available.  *See* 18 U.S.C. §§ 3553(a)(1)-(7).  "The district court has discretion to deny compassionate release if the Section 3553(a) factors counsel against a reduction."  *Ward*, 11 F.4th at 360; *see also United States v. Wallace*, No. CR 6:15-30, 2023 WL 4408942, at *1 (S.D. Tex. July 7, 2023).

## VI.  Discussion

Before seeking relief from the court, a defendant must first submit a request to the facility's warden where he is housed to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait 30 days from the warden's receipt of his request.  18 U.S.C. § 3582(c)(1)(A); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020).

Here, the Government does not dispute that Hope has met this requirement and neither does this court. Therefore, the court proceeds directly to the merits.

### A. *Extraordinary and Compelling*

Hope argues that a combination of factors, including his successful rehabilitation, young age at the time he committed the crime, and consecutive state and federal sentences constitute extraordinary and compelling circumstances that warrant release. The undersigned agrees, but on a slightly different basis. Hope's age at the time of the offense, remarkable efforts at rehabilitation over the last decade, and completion of approximately 97% of his federal sentence—in combination—constitute extraordinary and compelling reasons to grant compassionate release.

#### i. *Youth at the Time of the Crime*

"In the context of analyzing motions for sentence reductions under § 3582(c)(1)(A), courts have recently started considering whether a defendant's age at the time of an offense bears on that defendant's culpability." *United States v. Espino*, No. 03-20051-08-JWL, 2022 WL 4465096, at *2 (D. Kan. Sept. 26, 2022); *see also United States v. Birkett*, No. 90-CR-1063-24, 2023 WL 4274683, at *4 (E.D.N.Y. June 29, 2023); *United States v. Golding*, No. 05-CR-538, 2022 WL 2985014, at *2 (S.D.N.Y. July 27, 2022); *United States v. Morris*; No. 99-CR-267-17, 2022 WL 3703201, at *8 (D. Conn. Aug. 26, 2022); *United States v. Ramsay*, 538 F. Supp. 3d 407, 423 (S.D.N.Y. 2021). "Adolescent crime generally merits lesser punishment," and a defendant's youth is highly relevant to the court's understanding of the offense. *Ramsay*, 538 F. Supp. 3d. at 424. Courts have weighed this consideration in compassionate release cases with varying results. *See, e.g., United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021) (affirming district court's finding of "extraordinary and compelling reasons" based on its

individualized review of all the circumstances and its conclusion "that a combination of factors" warranted relief, including the defendant's young age at the time of sentencing and rehabilitation while in custody); *United States v. Andrews*, 480 F. Supp. 3d 669 (E.D. Pa. 2020), aff'd, 2021 WL 3852617 (3d Cir. 2021) (noting that offender was only 19 years old at time he committed offenses, and that only 3% of all federal offenders were less than 21 years old in 2019; thus his age at time of offenses was beyond what was common, court adding that this young age indicated less culpability and enhanced possibility of rehabilitation and favored granting compassionate release); *United States v. McCoy*, 981 F.3d 271, 277-79, 286 (4th Cir. 2020) (affirming compassionate release for inmates who ranged in age from nineteen to twenty-four years of age at time of offense and had minimal or no criminal histories; had spent close to more than half their lives in prison, having served either seventeen or twenty five years; had engaged in rehabilitation programs; and if sentenced today, would likely be subjected to sentences that were either sixteen or thirty years shorter); *United States v. Tuakalau*, 598 F.Supp. 3d 1222 (D. Utah 2022) (granting compassionate release based, in part, on the defendant's age at the time of offense). *But see United States v. Sepulveda*, 34 F.4th 71 (1st Cir. 2022) (finding that district court did not abuse its discretion in concluding that prisoner's young age at time of crimes did not present extraordinary and compelling reason for compassionate release); *United States v. Susinka*, No. 03-CR-90-16, 2023 WL 2402914, at *6 (N.D. Ill. Mar. 8, 2023) ("The Court does not view [the defendant's] young age at the time of his crimes and his unstable childhood environment as bases for the extraordinary relief he seeks … Young people commit their share of crime, and then some. Their age is not extraordinary and compelling–if anything, it is all too common.")

Many of the courts that have addressed this issue relied on the parameters established by United States District Judge Jed Rakoff in *United States v. Ramsey*, 538 F. Supp. 3d 407 (S.D.N.Y. 2021). Judge Rakoff noted that his opinion in *Ramsay* was the first to address whether a defendant's youth at the time of an offense may contribute to a finding of extraordinary and compelling circumstances in compassionate release cases. *Id*. at 415. He based the decision on sound, recent scholarship relating to adolescent brain development as well as Supreme Court cases relating to youth in sentencing. *See id*. at 416-17 (citing *Montgomery*, 577 U.S. at 206-13). Judge Rakoff identifies four "attributes of adolescence that matter in sentencing": 1.) immaturity, 2.) susceptibility, 3.) salvageability, and 4.) dependency. *Id*. at 416. "While the court need not repeat the key aspects of the *Ramsay* opinion, the court finds that opinion highly relevant to the facts of this case and is persuaded that the relevant features of adolescence described in *Ramsay* likely influenced defendant's conduct in this case." *Espino*, 2022 WL 4465096, at *2 (applying four *Ramsay* factors in granting compassionate release case where defendant was sentenced to a term of life imprisonment at age twenty due to the application of the murder cross-reference provision pursuant to the Sentencing Guidelines).

a.     Immaturity

First, the court notes that Hope's juvenile record is extraordinary in that it is unfortunate, shocking, and uncommon. Hope struggled in his adolescent years and made extremely troubling decisions, which resulted in gang association and thirteen convictions before his 18th birthday. (Doc. 117, p. 40.) These convictions resulted in an unusually high criminal history for a 19 year old defendant—a subtotal criminal history score of eight, plus two additional points for a juvenile offense committed while on parole, and one point for juvenile offense committed less than two years following his release for the sentence of unauthorized use of a motor vehicle and

12

fleeing.  (Doc. No. 89, p.11.)  Consequently, Hope had a criminal history category of V at the time of sentencing, which significantly increased his sentencing guideline range (such that the guideline range (168 to 210 months) was beyond the statutory maximum penalty of fifteen years).  *Id.*    This criminal history shows that he possessed "a lack of maturity and underdeveloped sense of responsibility that made him more likely to make egregious mistakes and engage in poor decisionmaking." *Espino*, 2022 WL 4465096, at *2.  Accordingly, this factor weighs heavily in Hope's favor.

b.    Susceptibility

Courts, when sentencing adolescent offenders and particularly when the criminal act took place in the presence of peers, should keep in mind adolescents' temporarily enhanced susceptibility to peer influence.  *Ramsay*, 538 F. Supp. 3d 407, 421–22.  During his teenage years, Hope lived in a single-parent household in Port Arthur, Texas.  (Doc. 89, p. 12.)  His biological father testified at his sentencing hearing and admitted that he was an absent father who neglected the defendant, which allowed Hope to run the streets.  (Doc. 117, p. 35.)   Hope admitted gang membership during his teenage years and the records show his criminal behavior started at age 13.  (Doc. 89, 12-13.)  Although Hope attended ninth grade while incarcerated in the Texas Youth Commission, he never enrolled in school after being released in 1995.[14]  (Doc. 89, p. 14.)   He committed most, if not all, of his crimes with others, all of which demonstrate that Hope was susceptible to negative influences at the time of his crime due, in part, to his young age.  This factor also weighs in Hope's favor.

c.    Salvageability

Salvageability relates to "the chance that [a defendant's] youthful 'character deficiencies will be reformed.'" *Ramsay* at 422 (quoting *Graham v. Florida*, 560 U.S. 48, 68 (2010)).  The

---

[14]    Although he later earned his GED in prison.  (Doc. No. 144, p. 20.)

Supreme Court has noted that a "third broad difference [between juveniles and adults] is that the character of a juvenile is not as well formed as that of an adult. The personality traits of juveniles are more transitory, less fixed." *Id.* (citing *Roper v. Simmons*, 543 U.S. 551, 570 (2005). This "struggle to define their identity" decreases the likelihood "that even a heinous crime committed by a juvenile is evidence of irretrievably depraved character." *Id.*

In *Ramsay*, Judge Rakoff explained that "[i]t is all the more important for federal courts to recognize the salvageability of adolescent offenders because (with very limited exceptions[ ]) the federal criminal justice system no longer permits parole." *Id.* at 425. As a consequence, "even an offender who demonstrates that he has matured beyond the seemingly incorrigible person of his youth will have no chance to show his rehabilitation" and obtain early release. *Id.* (quoting *United States v. Portillo*, 981 F.3d 181, 187 (2d Cir. 2020)). This factor relates to rehabilitation efforts, which is discussed *infra* at Section ii, and weighs in Hope's favor.

### d.    Dependence

"[A]dolescent offenders are less culpable because they have been dependent on others for most or all of their lives. Therefore, relative to adults' crimes, adolescents' crimes are less a product of their choices and more a product of their environment." *Ramsay* at 422, citing *Roper*, 543 U.S. at 569, 125 S. Ct. 1183. ("[J]uveniles have less control, or less experience with control, over their own environment. '[A]s legal minors, [juveniles] lack the freedom that adults have to extricate themselves from a criminogenic setting.' ") (internal citations omitted). *United States v. Rengifo*, 569 F. Supp. 3d 180, 193 (S.D.N.Y. 2021). Hope's gang involvement and absent father suggest that he was highly dependent on others as a juvenile, and this dependance landed on role models who encouraged and participated in in criminal behavior. Consequently, this factor also weighs in Hope's favor.

14

e.      Misunderstanding of the Law at a Young Age

Hope claims that his young age and naivety contributed to a misunderstanding that his state and federal sentences would run consecutively.    However, the *Agreed Punishment Recommendation* issued by the state court *clearly* states that the agreed term of punishment shall run "**CONSECUTIVELY** WITH 1:97-CR-105 (3)[the instant federal case]"  *State of Texas v. Hope*, Case No. F97-74-750 (Jefferson County April 12, 1999 (Agreed Punishment Recommendation)) (emphasis added) (referencing Case No. F97-74744 (Unauthorized Use of a Vehicle), F97-74743 (Unauthorized Use of a Vehicle), F97-74790 (Aggravated Robbery), F-98-76545 (Escape), and F97-74799 (Aggravated Robbery)).   Hope's executed state plea documents explicitly specify that his state sentence shall run consecutively with his federal sentence, and misunderstanding of the law and failed collateral proceedings are not a basis for relief pursuant to  §  3582(c)(1)(A).    Therefore,  the  undersigned  finds  that  this  factor  weighs  against compassionate release.

ii.    *Just Punishment and Rehabilitation*[15]

Hope turned 45 years old on August 7, 2023, and has been incarcerated since his 19th birthday.  He has less than six months remaining on a 168-month term of imprisonment before he is eligible for home detention.  (Doc. No. 144, p. 21.)  His *Memorandum Response* to the court indicates that he worked in the Unicor Prison Industries for over a decade, which required attendance every Monday through Friday from 7:00am to 3:00 pm.  (Doc. 155, p. 1.)  The evidence shows that that he has a clear conduct record, which he claims "speaks to the sincerity" of a changed character.  (*Id.*)  Hope's prison assessment form rates his risk level for recidivism as "low," and he has earned completion certificates in the areas of Financial Recovery (August 2019), Business Management (June 2017), Career Planning (October 2016 and August 2019), Employment (August 2019), Suicide Prevention (March 2017), CDL (January 2017), Quality Control Technician Course (June 2015), Life Skills (October 2016), Release Preparation (October 2016), and "Secrets of Science" (February 2017).[16]  (Doc. No. 144, p. 23-34.)  In

---

[15]    The proposed amendments recognize: "Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement."  Nonetheless, the amendments add a proviso that states: "However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted."  U.S.S.G. § 1B1.13(d).

    Therefore, while the court may consider rehabilitation efforts, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t); *see Shkambi*, 993 F.3d at 392; *Brooker*, 976 F.3d at 237-38 (holding that a district court's discretion in sentencing is broad; however, there is a "statutory limit on what a court may consider to be extraordinary and compelling … [and] '[r]ehabilitation ... alone shall not be considered an extraordinary and compelling reason.'" (quoting 28 U.S.C. § 994(t))); *United States v. Hudec*, No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone.").  In fact, "[m]aking good use of one's time in prison is not uncommon, and indeed is expected."  *United States v. Blanco*, No. 16-CR-408 (CS), 2021 WL 706981, at *2 (S.D.N.Y. Feb. 22, 2021) (quoting *United States v. Alvarez*, No. 89-CR-229, 2020 WL 4904586, at *7 (E.D.N.Y. Aug. 20, 2020)).

[16]    Hope earned these certificates while incarcerated at FCI Pollock, which were attached as exhibits to his 2020 motion.  He subsequently transferred facilities, and Hope has not supplemented the record with more recent evidence of similar achievements.  These achievements were earned prior to the First Step Act, which indicates a sincere attempt at rehabilitation for success upon release, and not window dressing for a compassionate release motion.

December 2017, Hope earned a certificate of recognition for "Hardest Worker." (Doc. No. 144, p. 35.) On June 14, 2023, U.S. Probation filed a sealed request to modify conditions of supervised release, which indicates that Hope consents to residing in a residential reentry center as a prerelease component for a period of 180 days. (Doc. No. 161, p. 1-3.) Judge Truncale granted this request on June 28, 2023. (Doc. No. 162.)

At sentencing and before his fifteen year state sentence was imposed, Judge Cobb pronounced: "if there is any rehabilitation, [Hope will] do it in fourteen [years]." (Doc. 117, p. 40.) Twenty-six years later, Hope's institutional record demonstrates a sincere change in maturity and appreciation for the law and order that he lacked as a troubled teenager and young adult. The undersigned is hopeful that Hope now understands the significance of his criminal acts and has overcome the environmental influences that contributed to his criminal behavior. Moreover, the undersigned applauds Hope's efforts to better himself in preparation for his forthcoming release. Accordingly, the undersigned finds that this factor also weighs in favor of release.

### B.    The § 3553 Factors

The court must also consider the sentencing factors under Section 3553(a) when weighing a defendant's request for compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *Chambliss*, 948 F.3d at 693–94. Even when a prisoner has demonstrated an extraordinary and compelling reason under the compassionate release statute, relief may still "be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *Id.* Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate

deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for--(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; (5) any pertinent policy statement issued by the Sentencing Commission[17]; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a).   Moreover, the Fifth Circuit has recognized "[a]ge and lack of guidance as a youth are factors that may be considered under § 3553(a)."  *United States v. Acosta*, 584 F. App'x 276, 277 (5th Cir. 2014) (*citing United States v. Mondragon–Santiago*, 564 F.3d 357, 363 & n. 4 (5th Cir. 2009)); *United States v. Helmstetter*, No. CR 92-469, 2023 WL 3724157, at *4 (E.D. La. May 30, 2023).

After applying these factors, the undersigned maintains that Hope's claim for a compassionate release is still warranted.

### i.    Nature and Circumstances of the Offense

Section I, *supra*, details the nature and circumstances of Hope's federal offense, which establishes that Hope was a "lookout" for the carjacking.  Although the carjacking victim was injured when Hope's co-defendant stuck him in the face with a firearm, the injuries were not life threatening and there is no evidence that Hope had any intent to harm anyone or discharge a firearm.  Had Hope's co-defendant *not* used a firearm during the offense, the undersigned calculates his Guideline range to be only 63-78 months.  However, Hope did have a history of

---

[17]    The Fifth Circuit has held that the sentencing court "must also consider the policy statements of the Sentencing Commission, [18 U.S.C.] § 3553(a)(5), which expressly allow for consideration of the defendant's age, 'including youth[.]'"  *United States v. Sparks*, 941 F.3d 748, 755 (5th Cir. 2019) (citing U.S.S.G. § 5H1.1, p.s.).

criminal activity and gang association.  At sentencing, Hope's guideline range was dramatically elevated due to his adolescent criminal history and his co-defendant's actions.

ii.      Personal Characteristics and History of Defendant

Section II, *supra*, discusses the history and characteristics of the defendant.  Hope spent his teenage years as an alleged gang member stealing cars and burglarizing homes.  He spent most of his teenage years incarcerated and committed the instant federal offense at age 18. Although some courts might consider such serious criminal behavior at a young age to weigh against a sentence reduction, the undersigned's approach is different.  The undersigned finds that Hope's criminal history as an adolescent and young adult is remote and—after 25 years in prison—might no longer reflect his character.  *See Eccleston*, 543 F. Supp. 3d at 1150 (finding that defendant will not reoffend because, *inter alia*, he was 18 at the time of offense and had been incarcerated for 25 years with no disciplinary history and impressive rehabilitation efforts). Hope has demonstrated maturity, remorse, and personal growth.  While incarcerated, Hope made strong attempts to improve his chances of maintaining success outside prison walls through vocational training and employment.  His probation officer presented a solid release plan, which has been approved by the court, and his rate for recidivism is low.  (Doc. 155, p. 3) (Male Pattern Risk Scoring Assessment that calculates his general and violent risk levels as "low").

iii.     The Needs for a Sentence to Provide Just Punishment

Hope is eligible for home detention on December 11, 2023, and has a projected release date of June 11, 2024.  (Doc. 144, p. 21.)  He has effectively served nearly 97% of his federal sentence and is on the verge of release.  *See, e.g., United States v. Muniz*, 612 F. Supp. 3d 699, 702 (S.D. Tex. 2020) (granting release where defendant served 80% of reduced sentence*; compare with United States v. Carbajal*, No. 2:12-CR-00010-JRG(1), 2022 WL 17736349, at *7

(E.D. Tex. Dec. 16, 2022) (denying release were defendant served ten years of 16.5 year sentence). The undersigned finds that 26 years—or Hope's entire "time served" in prison—constitutes just punishment for the crimes he committed. Moreover, because Hope is on the verge of release after serving nearly all of imprisonment term, the undersigned finds that this factor also weighs in his favor.

iv. Unwarranted Sentence Disparity

Section 3553 also requires that courts consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C § 3553(a)(7). In this case, Hope's co-defendants have already served their prison sentences and been released. (Doc. No. 197) (Co-defendant Romero was sentenced to 151 months and released on September 19, 2008); (Doc. No. 140) (co-defendant Horace was sentenced to 180 months and released on October 5, 2011). However, the consecutive nature of Hope's federal and state sentences resulted in a term of imprisonment of 348 months—longer than the median federal sentence for murder (261 months), sexual abuse (207 months), kidnapping (184 months), child pornography offenses (110 months), or robbery (106 months). *See United States Sentencing Commission Statistical Information Packet for Fiscal Year 2022, Fifth Circuit*, p. 10 (available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2022/5c22.pdf).[18] Therefore, the undersigned finds that this factor also weighs in favor of compassionate release.

### VII. Conclusion and Recommendation

To prevail, Hope must "show that he 'face[s] some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner' that leads 'irresistibly' to the conclusion that the prisoner has a 'singular' and 'remarkable' need for early

---

[18]    This *Statistical Information Packet* does not list the median sentence for carjacking.

release." *McMaryion*, No. 21-50450, 2023 WL 4118015, at *1 (5th Cir. June 22, 2023) (quoting E*scajeda*, 58 F.4th at 186); *Ozen*, No. 1:14-CR-118, 2023 WL 4467160, at *4; *United States v. Franks*, No. 4:14-CR-155, 2023 WL 4370426, at *3 (E.D. Tex. July 6, 2023).

Hope's age at the time of offense, as a lone factor, does not compel compassionate release. Neither do his efforts at rehabilitation. However, the undersigned must employ a holistic review of the case and identify any compelling reasons that would result in irreparable harm or injustice if relief is not granted. In exercising its discretion, the undersigned finds that Hope's age and immaturity at the time of offense and efforts at rehabilitation weigh heavily in his favor. But does his situation lead "irresistibly" to the conclusion that he has a "singular" and "remarkable" need for early release? The undersigned finds that it does.

Hope committed the federal offense of carjacking in 1997 at age 18. His case is "unique" because his adolescent criminal behavior, which was unusually abhorrent for a young adult, contributed to a sentencing guideline calculation in excess of the statutory maximum penalty. Consequently, Hope was sentenced to 168 months—just one year short of the statutory maximum. At his sentencing hearing, Judge Cobb was aware of the (unrelated) pending state charges, however he did not specify whether the sentences were to run concurrently or consecutively, and Hope's attorney did not ask for clarification. Hope was later sentenced in state court to 15 years for robbery, which he served in TDCJ custody prior to his federal sentence. As a result, Hope's federal and state sentences totaled 348 months.

Hope has no prison discipline history and maintains employment. His co-defendants have been released. He has a court-approved release plan with only months left until he is eligible for home detention. Having determined that extraordinary and compelling reasons justify release and considering all other applicable § 3553 factors, the undersigned finds that

21

Hope has demonstrated a "remarkable" need for early release and recommends granting his Motion for Compassionate Release and reduce his sentence under 18 U.S.C. § 3582(c)(1)(A) to time served, and order that he be immediately released from custody (upon adoption of this report and recommendation) under the previously imposed conditions of supervised release.

## VIII. Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C), each party to this action has the right to file objections to this Report and Recommendation. Objections to this Report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) be served and filed within fourteen (14) days after being served with a copy of this Report, and (4) be no more than eight (8) pages in length. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CRIM. P. 59(b)(2); E.D. TEX. LOCAL R. CR-59(c). A party who objects to this Report is entitled to a *de novo* determination by the United States district judge of those proposed findings and recommendations to which a specific objection is timely made. 28 U.S.C. § 636(b)(1)(C); FED. R. CRIM. P. 59(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to *de novo* review by the United States district judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such

findings of fact and conclusions of law accepted by the United States district judge, *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 23rd day of August, 2023.

Zack Hawthorn
United States Magistrate Judge